**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAO ZHANG,<br>Petitioner,<br>v.<br>WARDEN OF ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 5:26-cv-03542-SP<br><br>**MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

**I.**

**INTRODUCTION**

On June 25, 2026, petitioner Hao Zhang, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. Petitioner contends his detention violates his right to procedural due process under the Fifth Amendment and the Immigration and Nationality Act ("INA"). Petitioner seeks immediate release from immigration custody or, in the alternative, a bond hearing, as well as declaratory and other injunctive relief.

On July 6, 2026, petitioner filed a Reply. Docket no. 8. Respondents filed an Answer later that same day.[1] Docket no. 9.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief. The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody along with other relief.

## II.

## BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. Pet. ¶¶ 1, 7.[2] On or around April 21, 2023, petitioner entered the United States and was apprehended by immigration agents. Pet. ¶ 19; *see* Answer, Ex. A. Petitioner was released from custody on his own recognizance on April 22, 2023.[3] *See* Answer, Ex. A. Petitioner complied with all of his reporting requirements. Pet. ¶ 23.

After his initial release from custody, petitioner applied for asylum. *Id.* ¶ 22. Petitioner was employed and a member of a church. *Id.* ¶ 23.

On May 24, 2026, ICE detained petitioner at the 2026 Fleet Week event at the Port of Los Angeles. *Id.* ¶ 24; *see* Answer, Ex. A. Petitioner alleges the ICE officers did not present petitioner with a warrant, nor did they inform him of the reason for his arrest. Pet. ¶ 25. Petitioner's Form I-213 states petitioner was at some point served with an

---

[1] Although petitioner contends respondents' Answer was due on July 3, 2026, since July 3 was a holiday and the following two days were weekend days, the Answer was timely. *See* docket no. 5.

[2] The Petition is signed only by petitioner's counsel and it is not verified by petitioner. The court accepts the facts alleged in the Petition: (1) for the purposes of Part II of this opinion if uncontested; (2) if supported by documents submitted by petitioner as part of the Petition; or (3) if the information could be within counsel's personal knowledge.

[3] Petitioner alleges he was released from custody on or about May 1, 2023. Pet. ¶ 21.

arrest warrant, but also notes petitioner's arrest was not planned but instead part of a general enforcement operation at Fleet Week. Answer, Ex. A. Petitioner did not have prior notice that he would be detained and was not provided an individualized custody determination. Pet. ¶ 27.

## III.

## DISCUSSION

Petitioner raises two claims for relief, contending his detention violates his procedural due process rights under the Fifth Amendment and the INA. *Id*. ¶¶ 29-50. In their Answer, respondents contend petitioner appears to be a member of the Bond Eligible Class certified in *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), judgment entered sub nom. *Maldonado Bautista v. Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), so to the extent he is entitled to a remedy, it would be a bond hearing.[4] Answer at 2-3.

### A. This Court Has Jurisdiction Over the Claims in the Petition

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues he should be released from respondents' custody because

[4] Petitioner is not a member of the Bond Eligible Class certified in *Maldonado Bautista*. The Bond Eligible Class categorically excludes those who, like petitioner, were apprehended upon arrival to the United States. *See Bautista*, 813 F. Supp. 3d at 1127. Petitioner was apprehended upon arrival into the United States and was then paroled into the country. Pet. ¶ 19; Answer, Ex. A; *see Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("release on recognizance" is another name for "conditional parole"). As a result, petitioner cannot be a *Maldonado Bautista* class member.

his detention violates the Due Process Clause of the Fifth Amendment. *See* Pet. ¶¶ 29-40. He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging his detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

## B. Petitioner's Detention Without Adequate Procedural Protections Violated Due Process

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the

State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

**1. Petitioner Has a Protected Liberty Interest**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues he has a liberty interest in his release from immigration custody. *See* Pet. ¶¶ 30-31.

Conditional release from custody may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). "Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (citing *Young*, 520 U.S. at 147-49); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482).

In *Morrissey*, the Supreme Court explained that "[t]he liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime." 408 U.S. at 482. "Subject to the conditions of [their] parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.*

This was petitioner's situation. Petitioner arrived in the United States in April 2023 and has resided here ever since. Pet. ¶¶ 7, 19. Petitioner has community ties, obtained employment, and has a pending asylum application. *Id.* ¶¶ 22-23. Petitioner established a life for himself in the United States while released on parole and therefore has acquired a protected liberty interest in his release from immigration custody. *See e.g., Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1163 (C.D. Cal. 2025); *Mody v. Warden*, 2026 WL 51976, at *5-6 (C.D. Cal. Jan. 5, 2026); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("petitioner has a liberty interest in his continued release on bond."); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025); *R.D.T.M.*, 2025 WL 2686866, at *4-5; *Esquivel Pacheco v. LaRose*, 2026 WL 242300, at *6 (S.D. Cal. Jan. 29, 2026); *Osmonaliev v. Cantu*, 2025 WL 3637397, at *1 (D. Ariz. Dec. 16, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321-22 (W.D. Wash. 2025).

**2. <u>Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Re-Detention Under the Due Process Clause</u>**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here his interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). Petitioner has developed ties to the community since his arrival in the United States. He is a member of a church and is employed. *See* Pet. ¶ 23. Given his ties to the community and ability to work in the United States, petitioner has formed the "enduring attachments of normal life" described in *Morrissey*. As such, his personal interest in remaining out of immigration custody is extremely high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents, in effect, already made such a determination with respect to petitioner when they decided not to detain him in the first place. *See* 8 C.F.R. § 212.5(b) (requiring that a non-citizen "present neither a security risk nor a risk of absconding" before being granted parole). Moreover, respondents do not argue that petitioner is a danger to the community or flight risk. Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. As other courts have repeatedly recognized, "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Meneses*, 811 F. Supp. 3d at 1164; *see also R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1036; *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted); *see also Pinchi*, 792 F. Supp. 3d at 1036. Moreover, because petitioner has already been found not to be a danger to the community or a flight risk by respondents, the government has minimal interest in detaining him at all, absent some showing of changed circumstances. *See Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").

In sum, given petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of his liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors strongly favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment. Because petitioner's re-detention was unlawful, the proper remedy is release from custody. *See Singh*, 2025 WL 3251437, at *9; *Yataco*, 2025 WL 4065463, at *7; *see also Faizyan v. Casey*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (collecting cases).

**3. Petitioner Is Entitled to a Pre-Deprivation Bond Hearing Before Any Future Re-Detention**

Typically, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citation omitted). In the context of both parole and probation revocations, the nearest analogues to petitioner's situation, the Supreme Court has required pre-deprivation hearings to determine whether an individual's release may be revoked. *See Morrissey*, 408 U.S. at 480-86; *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Given petitioner's substantial liberty interest and the high risk of erroneous deprivation of that interest absent such a pre-deprivation hearing, due process requires a pre-deprivation hearing. *See, e.g., Singh*, 2025 WL 3251437, at *8; *R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases). Indeed, in the immigration parole revocation context, courts have routinely found that individuals should be "afforded a hearing before a neutral decisionmaker prior to any re-arrest or re-detention to determine if the government has demonstrated by clear and convincing evidence that his detention is necessary to prevent danger to the community or flight." *Singh*, 2025 WL 3251437, at *8; *Yataco*, 2025 WL 4065463, at *7; *R.D.T.M.*, 2025 WL 2686866, at *8; *Pinchi*, 792 F. Supp. 3d at 1038; *Padilla v. Bowen*, 2025 WL 3251368, at *10 (C.D. Cal. Nov. 21, 2025).

**C. Petitioner's Remaining Claim**

Petitioner also argues that respondents have violated the INA. Pet. ¶¶ 41-50. Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's remaining claim. Petitioner may raise the claim again if he is subject to any future detention.

**IV.**

**ORDER**

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Hao Zhang (A# 246-875-142) from immigration custody; (3) respondents shall return any confiscated property and

documents to petitioner upon his release; (4) respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community; and (5) respondents shall file a status report no later than September 2, 2026, confirming that petitioner has been released from respondents' custody.

Dated: August 28, 2026

SHERI PYM
United States Magistrate Judge